UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

**ROOSEVELT MAY,**

   Plaintiff,

v.                      No. 4:24-cv-01070-P

**GILCHRIST AUTOMOTIVE GROUP, LLC,
ET AL.,**

   Defendants.

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendants' Motion for Summary Judgment. ECF No. 38. Having considered the briefing, evidence of record, and applicable law, the Court concludes the Motion should be and hereby is **GRANTED**.

## BACKGROUND

This case arises from Plaintiff Roosevelt May's termination as general manager of three automotive dealerships in Lawton, Oklahoma: Southwest Buick GMC, Southwest HMS, and Southwest MMC (collectively, the "Dealerships"). Defendant Gilchrist Automotive Group, LLC owns and manages these Dealerships.

In fall of 2022, Defendants offered May employment as general manager of the Dealerships. He signed a written pay plan providing (among other terms) a monthly salary, a monthly commission tied to net profit, and an option to purchase up to 20% ownership interest in each dealership. May later exercised that option to purchase 10% interest in the Mazda dealership.

However, during May's tenure as general manager, Defendants became dissatisfied with his work performance. The summary judgment record contains evidence that May routinely failed to work during the Dealerships' operations hours; missed Saturdays; left the Dealerships

during the workday without the required notice; and failed to enforce company policies. The record also reflects concerns regarding May's management and oversight of the Dealerships. This includes employee relations issues, failure to document and investigate a report of sexual harassment, and repeated errors in reviewing expenses and vehicle deals.

Defendants terminated May's employment in February 2024. May contends that he was both hired and fired because of his race and that Defendants manipulated dealership expenses in a manner that reduced the compensation owed to him under the pay plan.

May filed this suit asserting: (1) race discrimination under Title VII of the Civil Rights Act of 1964; (2) race discrimination under 42 U.S.C. § 1981; (3) breach of contract relating to the pay plan; and (4) fraudulent misrepresentation in the alternative to the contract claim. Defendants move for summary judgment on all claims. The Motion is now ripe for review.

## LEGAL STANDARD

Summary judgment is proper if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A dispute is "genuine" if the evidence presented would allow a reasonable jury to return a verdict in favor of the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 242–43 (1986). A fact is "material" if it would affect a case's outcome. *Id.* at 248. Generally, the "substantive law will identify which facts are material," and "[f]actual disputes that are irrelevant or unnecessary will not be counted." *Id.* In assessing whether summary judgment is appropriate, the Court views evidence in the light most favorable to the nonmovant. *Cunningham v. Circle 8 Crane Servs., LLC*, 64 F.4th 597, 600 (5th Cir. 2023).

The Court may rely on any evidence of record but need only consider those materials cited by the parties. FED. R. CIV. P. 56(c)(1)–(3); *see generally Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (noting summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law"). But the Court need not mine the record for evidence supporting the nonmovant; the burden falls on the moving party to simply show a lack of evidence supporting the nonmovant's case. *See Malacara v. Garber*, 353 F.3d 393, 404–05 (5th Cir. 2003).

## ANALYSIS

Defendants seek summary judgment on each of the claims levied by May. The Court will address each in turn.

### A. Race Discrimination (Title VII & Section 1981)

May's Title VII and Section 1981 claims are evaluated under the *McDonnell Douglas* burden-shifting framework when, as here, the plaintiff relies on circumstantial evidence. *Wesley v. Gen. Drivers, Warehousemen & Helpers Loc. 745*, 660 F.3d 211, 213 (5th Cir. 2011). *McDonnell Douglas* requires a three-step burden-shifting framework for evaluating discrimination claims. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). The burden initially lies with the plaintiff to establish a prima facie case. *Id.* It then shifts to the defendant to "articulate some legitimate, nondiscriminatory reason for the [employment action]." *Id.* Finally, a plaintiff is afforded an opportunity to show through adequate evidence that the defendant's stated reasons were a mere pretext for discrimination. *Id.* at 804.

Courts review "racial discrimination and retaliation claims based on Title VII and 42 U.S.C. § 1981[] under the same rubric of analysis." *Johnson v. Halstead*, 916 F.3d 410, 420 (5th Cir. 2019). Assuming without deciding that May can establish a prima facie case, the burden shifts to Defendants to articulate a legitimate, nondiscriminatory reason for the termination. *Johnson v. PRIDE Indus.*, 7 F.4th 392, 406 (5th Cir. 2021).

Defendants meet that burden here. The summary judgment record includes evidence that May was terminated for poor performance and an inability to fulfill the duties of a general manager. Including repeated attendance problems, failures to enforce workplace policies, mishandling of employee relations issues, and mistakes resulting in

3

financial losses and operational problems for the Dealerships. *See* ECF No. 39 at 3–9. Even independently, each constitutes a legitimate, nondiscriminatory reason for termination.

May attempts to rebut these justifications with argument rather than evidence. For example, he contends that Defendants' witnesses lacked "detail" regarding leadership failures, and he disputes whether he should have been blamed for employee misconduct. ECF No 41 at 4, 9. But the evidentiary record contains specific operational and personnel issues that Defendants attributed to May's management. ECF No. 39 at 3–9. While Plaintiff may disagree with Defendants' assessment of these events, his arguments fail to create a fact issue on discriminatory motive. To the extent some of the provided reasons for termination violated the discovery rules, ECF No. 41 at 5–6, even assuming the truth of that argument, Defendants provide a variety of further justification for Mays termination. Each of which suffices as a legitimate, nondiscriminatory justification for his termination.

The burden consequently returns to May to identify competent evidence, creating a genuine dispute that Defendants' stated reasons are mere pretext for discrimination. *Johnson*, 7 F.4th at 406. May fails to meet that burden in both instances. May relies on remarks by a third party regarding how May was allegedly *hired* on the basis of his race. ECF No. 41 at 2–3. Even if May presented this evidence in an admissible form, evidence of hiring decisions has no bearing on his termination, nor does it show how the proffered reasons for his termination were merely pretextual. *See Corley v. Louisiana*, 816 F. Supp. 2d 297, 316 (M.D. La. 2011) (finding that the supposed evidence of racial hiring does not support an inference that race was a motivating factor in the ultimate employment action).

The relevant question at the pretext stage is whether Defendants' reasoning for the adverse action—here, the termination of May—was not the real reason for the decision, but rather a disguise for unlawful discrimination. Even if evidence of a DEI initiative is accurate, it does not meaningfully address the question at hand. Employers can hire and later fire employees for legitimate, nondiscriminatory reasons. The fact that May's hiring may have been based on his race does not, by itself,

make the later performance-based reasons for his termination pretextual.

To survive summary judgment, Plaintiff must point to evidence that Defendants' explanation for his termination is unworthy of credence. Because May provides no competent summary judgment evidence tying his termination to race, he has failed to overcome his summary judgment burden.

May also argues that Defendants' rationale for termination has shifted. ECF No. 41 at 3. Even so, Defendants' evidence consistently centers on May's performance while employed, and the additional examples offered at summary judgment are not inconsistent with that core explanation. The justification for May's termination has always been, and remains, performance-based. Providing additional justifications now does not alter the nature of the termination. In any event, May must produce evidence of intentional discrimination, not merely dispute the wisdom of Defendants' personnel decisions. He has failed to do so.

Accordingly, Defendants are entitled to summary judgment on May's Title VII and Section 1981 claims.

**B. Breach of Contract**

May's theory for breach of contract relies on the pay plan tying his monthly commission and annual bonus to net profit, and that Defendants "falsely inflated expenses" during his employment, reducing his net income and therefore reducing his commission, constituting a breach. ECF No. 1 at 10. May's briefing provides very little for the Court to review. May's *only* evidence in support of this theory is the deposition of Mr. Gilchrist, in which he discusses the concept of "packs." ECF No. 41 at 15. This theory relies upon the idea that these "packs," purchased by consumers, were not included in the gross profits of the dealerships and thus impacted May's bottom line. *Id.*

Even viewing the evidence in a light most favorable to the non-movant, it does not create a genuine dispute of material fact. From Plaintiff's bare briefing, it is unclear how these packs "inflated" dealership expenses. *See id.* In fact, using the packs as described by May

5

and in the deposition of Mr. Gilchrist was likely to *increase* gross profits. ECF No. 41–2 at 36 ("[I]t just accumulates in perpetuity until there's some emergency . . . if a store isn't doing well, it's going into other income.").

The evidence in the summary judgment record must be "such that a reasonable jury could return a verdict for the nonmoving party." *Ibanez v. Tex. A&M Univ. Kingsville*, 118 F.4th 677, 682 (5th Cir. 2024) (quoting *Boudreaux v. Swift Transp. Co.*, 402 U.S. F.3d 536, 540 (5th Cir. 2005)). May's conclusory briefing on the subject and the citation to a single deposition simply do not overcome this low bar. The evidence is "so weak [and] tenuous on an essential fact that it could not support a judgment in favor of the nonmovant." *Armstrong v. City of Dallas*, 997 F.2d 62, 67 (5th Cir. 1993). At present, that essential fact is the whole claim, and the minimal briefing is insufficient to even explain May's breach of contract theory. Consequently, no reasonable jury could arrive at a verdict in May's favor, and Defendants are entitled to summary judgment as a matter of law.

### C. Fraudulent Misrepresentation

May's fraudulent misrepresentation claim rests on the same "inflated expenses" theory, and May dedicates a single sentence in his Response to the claims defense. ECF No. 41 at 41. For the same reasons above, it also fails to overcome summary judgment.

## CONCLUSION

Accordingly, the Court concludes that Summary Judgment should be and hereby is **GRANTED**. All claims are **DISMISSED with prejudice**. Any pending requests for evidentiary sanction are **DENIED**.

**SO ORDERED** on this **20th day of January 2026.**

_Mark T. Pittman_
Mark T. Pittman
UNITED STATES DISTRICT JUDGE

6